## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| STEVEN ANTHONY SMALLWOOD<br>& CHASTITY ROSE SMALLWOOD, | §<br>§<br>§ | |
| *Plaintiffs,* | §<br>§ | |
| v. | §<br>§ | CASE NO. 6:23-CV-00477-ADA<br>JURY |
| THE FIRST NATIONAL BANK OF<br>McGREGOR, | §<br>§<br>§ | |
| *Defendant.* | §<br>§ | |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HON. ALAN D. ALBRIGHT, UNITED STATES DISTRICT JUDGE:**

Plaintiffs, Steven Anthony, and Chastity Rose Smallwood, file this original complaint against defendant, The First National Bank of McGregor, and allege as follows:

### PARTIES

1.      Plaintiffs, Steven Anthony, and Chastity Rose Smallwood are individuals who are citizens of the State of Texas.

2.      Defendant, The First National Bank of McGregor, a bank that is chartered under federal law.  Defendant has its principal place of business in the State of Texas.  Defendant may be served with process by serving its registered agent, J. Michael Beard, at 401 South Main Street, McGregor, Texas 76657-0387.

### JURISDICTION

3.      The Court has jurisdiction over the lawsuit pursuant to 28 U.S.C. § 1333 because the suit arises under a federal statue.  Specifically, this lawsuit arises under the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.,* which provides for a private cause of action against a lender

which violates TILA or Regulation Z promulgated thereunder (as codified at 12 C.F.R. § 226 *et seq*.) pursuant to 15 U.S.C. § 1640(e).

## CONDITIONS PRECEDENT

4.      All conditions precedent to plaintiffs' claim for relief have been performed or have occurred.

## FACTS

5.      On or about May 3, 2021, plaintiffs financed the purchase of their home located in McLennan County, Texas, through an owner finance transaction with defendant providing the financing to the seller.

6.      On or about February 6, 2022, plaintiffs refinanced their home and converted its financing from the seller financing to a deed of trust and a promissory note held by defendant payable at 5.75% interest.  Nathan Sloan, defendant's vice president/lending officer, handled this transaction for defendant with the assistance of Victoria Squyres through its Triangle Tower branch located at 510 North Valley Mills Drive, Suite 100, Waco, Texas 76710.

7.      On or about September 12, 2022, plaintiffs were solicited by Aaron Slye, then defendant's assistant vice president/lending officer, to apply for a home equity loan in the amount of $101,000 from defendant through its Triangle Tower branch.  Slye promised plaintiffs that they were preapproved for such a loan and could just roll it into their outstanding mortgage note and only pay an interest rate on the entire amount of 5.75%.

8.      After considering Slye's offer, plaintiffs' submitted an application to defendant for a home equity loan in the approximate amount of $75,000 with interest to be paid on said loan at 5.75% interest.  Plaintiffs were interested in a home equity loan because they had engaged LT Fencing to build a privacy fence around their backyard and another contractor to build a children's

playset in their backyard at a cost of approximately $16,716.30 and $14,000.00 respectively. Plaintiffs decided that the home equity loan as offered by Slye was a cost-effective way to pay off these debts.

9.      A few days after agreeing to make the home equity to plaintiffs, Slye informed plaintiffs that it would take approximately seven (7) working days for defendant's lending department to fund the loan but that in spite of the delay plaintiffs "could start writing the checks" to their home improvement contractors.  Based on these promises, plaintiffs informed their contractors that they would be paid in full out of the proceeds of the home equity loan.

10.      However, after a number of promised closing dates came and went, Slye informed plaintiffs that there was a problem with having the loan funded based on Nathan Sloan's errors in completing the loan documents for plaintiffs' prior home refinance transaction.  Based on this defendant-caused delay, defendant offered to loan plaintiffs approximately $30,000 as a bridge loan so plaintiffs could cover the balances due to their contractors.

11.      Slye promised that defendant would roll the bridge loan balance into the home equity loan at the time of its funding and plaintiffs would end up only being charged 5.75% for the bridge loan, as well.  Plaintiffs agreed to this offer and obtained approximately $27,000 in bridge funding which they used to pay their home improvement contractors.

12.      Once the home equity loan was funded, plaintiffs began receiving two (2) invoices in addition to their normal, monthly mortgage payment, to wit--one for monthly payments due on the balance of the home equity loan at 8.25% interest and one for monthly payments due on the bridge loan at 11.5% interest.  Plaintiffs immediately notified defendant that this was a breach of their agreement, and they would not make payments on the bridge loan.

13.     Defendant refused to modify the terms of the invoices even after being informed of their incorrectness and demanded plaintiffs repay the full amount of the bridge loan at 11.5% interest, as well as repay the full amount of the home equity loan at 8.25%.

## COUNT 1 – VIOLATION OF TILA

14.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 13, as if fully stated here.

15.     Plaintiffs allege that the loan that is the subject matter of this complaint was and is a consumer-credit transaction within the meaning of TILA, 15 U.S.C. §§ 1601 *et seq.*

16.     Defendant is a nationally chartered bank that can be sued under TILA.

17.     Defendant violated TILA when it (a) failed to disclose material facts of the loan; (b) misrepresented and concealed material facts of the loan; and (c) refused to rescind the loan after lawful demand for rescission.

18.     As a direct and proximate result of the above-mentioned defendant's conduct, plaintiffs suffered injury, losses and damages as described.

19.     Pursuant to TILA, the Act must be strictly construed, and liability imposed for any violation, no matter how technical.  Thus, plaintiffs seek actual damages based on the failures of defendant listed above.

20.     <u>Attorney fees</u>.  Plaintiffs are entitled to an award of attorney fees and costs under TILA, 15 U.S.C. § 1640(a)(2)(A)(i).

## COUNT 2 – VIOLATION OF THE DTPA

21.     Plaintiffs are consumers under the DTPA because plaintiffs are individuals who sought a loan of money to purchase goods or services for the improvement of their home.

22.     Defendant is a nationally chartered bank that can be sued under the DTPA.

23.    Defendant violated the DTPA when it engaged in false, misleading, or deceptive acts or practices which plaintiffs relied on to their detriment.  Specifically, defendant (a) represented that the bridge loan had approval, characteristics, uses, or benefits it did not have; (b) advertised the bridge loan with the intent not to enter into the loan transaction as advertised; (c) misrepresenting the authority of its loan officer to negotiate the final terms of a loan transaction; and (d) failing to disclose information about the bridge loan transaction that was known at the time of the transaction and the failure to disclose this information was intended to induce plaintiffs to enter into the bridge loan transaction that plaintiffs would not have entered into if the information had been disclosed.

24.    Plaintiffs gave defendant notice as required by the Texas Business and Commerce Code § 17.505(a).

25.    Defendant's wrongful conduct was a producing cause of plaintiffs' injury, which resulted in the following damages: economic damages based on the payment of an additional $27,000 in principal and additional interest payments on that amount at 11.5% per annum.

26.    Plaintiffs seek unliquidated damages within the jurisdictional limits of this Court.

27.    <u>Mental anguish damages</u>.  Defendant acted knowingly, which entitles plaintiffs to recover mental-anguish damages under Texas Business and Commerce Code § 17.50(b)(1). Specifically, defendant was informed by plaintiffs that they were in violation of the parties' loan agreement, but defendant doubled down on its deceptive trade practice by continuing to demand additional payments from plaintiffs.

28.    <u>Additional damages</u>.  Defendant acted knowingly, which entitles plaintiffs to recover treble economic damages under Texas Business & Commerce Code § 17.50(b)(1). Specifically, defendant was informed by plaintiffs that they were in violation of the parties' loan

5

agreement, but defendant doubled down on its deceptive trade practice by continuing to demand additional payments from plaintiffs.

29.    <u>Attorney fees</u>.  Plaintiffs are entitled to recover reasonable and necessary attorney fees for prosecuting this suit under Texas Business & Commerce Code § 17.50(d).

## PRAYER

30.    For these reasons, plaintiffs ask for judgment against defendant for the following: (a) actual economic damages; (b) special damages including mental anguish damages; (c) treble damages; (d) prejudgment and postjudgment interest; (e) costs of suit; (f) attorney fees; and (e) all other relief the Court deems appropriate.

Respectfully submitted,

THE ARONOWITZ LAW GROUP

By: /s/ *Mark Aronowitz*
    MARK ARONOWITZ
    State Bar No.: 00793281
    markaronowitz@hotmail.com
    P. O. Box 1201
    Texas City, TX 77592-1201
    Tel.:   (281) 402-6780
    Fax:    (281) 715-4284

ATTORNEY IN CHARGE FOR PLAINTIFFS,
STEVEN ANTHONY SMALLWOOD, *et ux*

OF COUNSEL:
JULIA CATHERINE HATCHER